UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                  :

DEVIN GIRODANO,                   :

                      Petitioner, :

                               :

   -against-                  :

CYNTHIA BRANN,               :

                        Respondent. :

                               :
------------------------------------------------------------- X

**<u>ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28
U.S.C. § 2254</u>**

21 Civ. 7623

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioner Devin Giordano petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 14, 2017, Petitioner pled guilty to 12 of 14 counts in a New York state court indictment, including murder in the second degree. On March 30, 2017, Petitioner was sentenced to multiple concurrent terms of imprisonment, the longest of which was 20 years to life. After his plea, Petitioner moved to vacate his guilty plea pursuant to N.Y. Crim. Pro. § 440. The New York Supreme Court denied the motion and the Second Department subsequently denied Petitioner's application for leave to appeal. Now, Petitioner seeks relief via his petition for a writ of habeas corpus on the grounds that he was denied effective assistance of counsel. For the reasons set forth below, the petition is denied.

**BACKGROUND**

      On February 14, 2017, Petitioner pled guilty to 12 of 14 counts in a New York state court indictment, including murder in the second degree.[1] Petitioner's plea stemmed from a

---

[1] Specifically, Petitioner pled guilty to "Murder in the Second Degree (PL § 125.25(3)) (Count 1); Burglary in the First Degree (PL § 140.30(2)) (Count 3); Burglary in the Second Degree (PL § 140.25(2)) (Count 4); Arson in the Third Degree (PL § 150.10(1)) (Count 6); Four counts of Tampering with Physical Evidence (PL § 215.20(2)) (Counts 7–10); Criminal Possession of Stolen Property in the Fifth Degree (PL § 165.40) (Count 11); Petit Larceny (PL §155.25) (Count 12); [and] two counts of Conspiracy in the Fourth Degree (PL § 105.10) (Counts 13 & 14)."

series of acts that took place on August 1 and 2, 2014 that culminated in the murder of Helen Mills and the subsequent burning of her home. During his plea allocution, Petitioner read the following statement:

> I went to 84 Greene Street, a dwelling, in the Village of Goshen, for the purpose of stealing money from the resident Miss Helen Mills. I had no permission or authority to enter 84 Greene Street. I reached through the window. I entered the residence for the purpose of stealing property or money. During the course of the burglary, Miss Mills suffered physical injuries cause[d] by another person which did cause her death.

Plea Tr. at 11–12. Petitioner also admitted that the person who caused the death of the victim was a participant in the burglary. *Id.*

At sentencing, the prosecutor represented that Petitioner's involvement in the death of Helen Mills was extensive. Specifically, she stated that on the night of August 1, 2014, Petitioner crafted a plan in which he and others would break into the home of Helen Mills, an 81-year old woman, and steal money from her to discharge a $90 debt her grandson owed to Petitioner. Purportedly, Petitioner told a group of friends that he wanted to carry out this robbery and said he would have no problem killing someone if needed. Sent. Tr. at 9. However, the only person who accompanied Petitioner to the home of Helen Mills was his girlfriend Jennifer Molyneax.[2] At the time, both Petitioner and Molyneaux were under the influence of marijuana and Xanax. At some point during the burglary, Mills was beaten, strangled, and killed. After realizing Mills had been killed, Petitioner and Molyneaux spread gasoline around the home and lit a match to start a fire. The trial court sentenced Petitioner to twenty years to life on the Count

---

Pet. Br. at 3 n.2. Petitioner was not indicted on Count 2 and the parties had agreed, as part of the plea agreement, that Count 5 would be dismissed.
[2] Molyneaux was indicted along with Petitioner and pled guilty to murder in the second degree on February 25, 2015.

One murder in the second degree charge, and lesser concurrent terms on the other eleven counts to which Petitioner pled guilty.

On August 5, 2014—three days after his arrest—Petitioner retained Benjamin Ostrer as counsel. Ostrer served as Petitioner's counsel through sentencing, but Petitioner retained different counsel on appeal and for the instant motion. In the preparation for Petitioner's defense, Amir Sadaghiani, an associate in Ostrer's office, worked on Petitioner's case. Sadaghiani joined Oster's firm in October 2014 and before that worked as an attorney in the Orange County District Attorney's Office. Additionally, the then-District Attorney for Orange County was David Hoovler, who had been law partners with Ostrer until approximately January 2014.

More than two years after entering his guilty plea, Petitioner sought to vacate that plea pursuant to N.Y. Crim. Pro. § 440. Petitioner argued that his plea was not voluntary and intelligent because it was coerced by the sentencing court and was the product of ineffective assistance of counsel. As to the ineffective assistance of counsel claim, Petitioner claimed that Ostrer and Sadaghiani were conflicted and that Ostrer had failed to advise Petitioner of a potential affirmative defense. The state court rejected all Petitioner's arguments and denied the motion to vacate on March 13, 2020. The Second Department denied the application for leave to appeal on October 16, 2020. Now, Petitioner seeks relief in the U.S. District Court on the grounds that trial counsel was conflicted and failed to advise him of an affirmative defense.

## DISCUSSION

### I. Legal Principles

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas petition to a state prisoner based on a claim that was

"adjudicated on the merits in State court proceedings," unless the state court's decision (i) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (ii) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). State court factual findings "shall be presumed to be correct," and a petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary" to clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* It is not enough to show that the state court decision was "wrong." Rather, the petitioner must show that "no fair-minded jurist could agree with the state court's application" of federal law. *Davis v. Ayala*, 576 U.S. 257, 277 (2015).

A federal court may not entertain a habeas petition unless the "state prisoner . . . exhaust[s] available state remedies before presenting his claim to federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Petitioner has done so. The New York Supreme Court, Orange County denied his motion to vacate his guilty plea on grounds similar to those presented here, and the Second Department denied the application for leave to appeal.

## II.    Ineffective Assistance of Counsel Claims

Petitioner contends that trial counsel was ineffective in two ways: (1) that trial counsel had conflicts based on connections to the District Attorney's office that generally prejudiced Petitioner; and (2) that counsel failed to advise Petitioner of an affirmative defense. Because the state court examined each issue, the state court's reasoning need only be reasonable under AEDPA. *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012). Because I find that the state court's analysis was reasonable, the habeas petition must be rejected.

In order to prevail on an ineffective assistance claim, Petitioner first "must show that counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (internal quotations and citations omitted). Second, Petitioner must show that counsel's mistakes prejudiced his case: that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In reviewing a state court's *Strickland* ruling, the operative question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); see also *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (the state court must not have merely erred, but rather its actions must be "somewhere between 'merely erroneous and unreasonable to all reasonable jurists'"). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant

has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## A. Trial Counsel's Purported Conflicts

Petitioner has failed to carry his burden to show trial counsel's alleged conflicts constitute a basis for relief. "To succeed on a claim of ineffective assistance based on his counsel's purported conflict of interest, the petitioner must show that his counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Wolfson v. United States*, 907 F. Supp. 2d 418, 424 (S.D.N.Y. 2012) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)).

The state court recognized that on the record before it, the existence of any conflict was "highly unlikely" but nonetheless concluded that Ostrer's former partnership or Sadaghiani's former employment as an assistant district attorney could have presented an appearance of conflict when viewed in the light most favorable to Petitioner. State Court Op., ECF No. 10-1, at 7. The state court reasoned that although it was unlikely Ostrer's prior partnership with the DA or Sadaghiani's former employment presented conflicts, Petitioner's subjective belief that those relationships presented an appearance of conflict was sufficient grounds to conduct an inquiry into whether Petitioner had been prejudiced. The state court's analysis on this point was reasonable, and, if anything, charitable to Petitioner in light of applicable law. *See Bryant v. Superintendent, Eastern Correctional Facility*, 2020 WL 8413423, at *4 (N.D.N.Y. Oct. 27, 2020) ("Significantly, courts recognize that the concerns about the use of privileged information that arise when a defense attorney joins the district attorney's office do not arise when a prosecutor becomes a defense attorney.") (citations and quotations omitted).

The state court then analyzed whether the appearance of a potential conflict resulted in any prejudice to Petitioner and concluded that it did not.[3]  The state court found that "defense counsel advocated competently and persuasively on [Petitioner's] behalf," and specifically noted successful suppression motions, fruitful efforts to obtain evidence to impeach the State's forensic scientists, and multiple meetings counsel had with Petitioner.  State Court Op. at 8.  The state court also noted, at the outset of its opinion, that it considered Petitioner's notice of motion and the accompanying exhibits and affirmations.  *Id.* at 1.  Again, the state court's assessment was consistent with applicable law, represented a reasonable interpretation of the facts before it, and reasonably reached the conclusion that any alleged conflicts did not adversely affect counsel's performance.  *See Cuyler*, 446 U.S. at 349–50.

Other than the failure to advise on an affirmative defense, discussed below, Petitioner identifies two specific alleged deficiencies with trial counsel's performance.  Neither is persuasive.  Petitioner, relying on *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), argues that it was error for the trial court not to alert Petitioner as to the potential conflict.  However, *Curcio* and its progeny are addressed to situations in which the same attorney represents two different defendants who may have divergent interests.  *See id.*  That is not the case here.

Next, Petitioner argues it was unreasonable for the state court to fail to consider the allegations that Mr. Ostrer did not pursue certain evidence because he did not want to "piss off the DA."  *See* Pet. Br. at 16.  The state court considered that those claims were "largely based upon unsubstantiated conclusory allegations."  State Court Op. at 5.  Rather, as the state court found, Ostrer had diligently litigated pretrial discovery and successfully suppressed Petitioner's

---

[3] In its opinion, the state court primarily analyzed New York law concerning attorney conflicts. *See, e.g.*, State Court Op. at 7 (citing *People v Konstantinides*, 14 NY3d 1, 10 (2009).  The cited decisions and legal framework the state court applied are consistent with federal law, *see Strickland*, 466 U.S. 668 at 692, and Petitioner does not argue that the state court applied the wrong law.

statements to the police, contradicting Petitioner's claim that Ostrer was unwilling to vigorously advocate for his client. Likewise, Petitioner confirmed at his plea allocution that he was satisfied with Ostrer's representation. On the record before me, there is no basis to conclude that the state court reached an unreasonable determination in evaluating Petitioner's *Strickland* claims. *See Knowles*, 556 U.S. at 123.

## B. Failure to Advise of Affirmative Defense[4]

Petitioner argues that the state court unreasonably concluded that Ostrer's failure to discuss an affirmative defense did not constitute ineffective assistance. Petitioner's argument is without merit. Under New York criminal law, it is an affirmative defense to second degree felony murder that the defendant:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
> (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

N.Y. P.L. § 125.25(3). Petitioner now argues that it was error for Ostrer not to discuss this so-called "non-slayer" affirmative defense to second degree felony murder.

Matters of strategy generally fall within the wide discretion of counsel and trial counsel is not required to consult with Petitioner as to each tactical decision that he made. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 417–418 (1988)). In considering the applicable law, the state court noted that a single, substantial error—

---

[4] Whether this claim is analyzed under the prejudice prong of a *Strickland* analysis or as a standalone basis for habeas relief, the result would be the same. The state court's analysis was sufficient to establish that any failure to advise Petitioner of an affirmative defense to murder in the second degree did not constitute ineffective assistance in its own right, and that any such failure did not constitute prejudice resulting from a purported conflict of interest.

if serious enough—can qualify as ineffective assistance. State Court Op. at 10 (citing *People v. Hobot*, 84 N.Y.2d 1021, 2022 (1995)). However, after evaluating the record before it, the state court concluded that Ostrer's failure to discuss the non-slayer affirmative defense did not constitute ineffective assistance and that accepting a plea was reasonable and appropriate. Before the state court and in this proceeding, the DA's Office identified numerous pieces of evidence that linked Petitioner to the murder and undermined the claim that an affirmative defense could have succeeded. *See, e.g.*, Resp't R. Ex. at 594–95. The identified evidence— including inculpating inconsistencies in Petitioner's own statements to police and potential testimony from multiple witnesses that Petitioner discussed killing someone on the night of the murder—strongly undercuts the claim that a non-slayer defense could have been plausibly successful. *See id.* at 595–97. In its analysis, the state court noted that Ostrer was aware that Petitioner's co-defendant had already pled guilty, inculpated Petitioner, "appeared poised to testify against" Petitioner, and that the DA could present first degree murder charges to a grand jury if Petitioner did not take a plea. State Court Op. at 11.

Petitioner relies on *DeLuca v. Lord*, 77 F.3d 578, 584–85 (2d Cir. 1996) for the proposition that failure to consider an affirmative defense constitutes prejudicial error on the part of trial counsel. But in that case, the Second Circuit concluded that failure to consider an Extreme Emotional Disturbance affirmative defense constituted prejudicial error because the potential defense was "of great potential importance to [the defendant's] case," the district court found it likely that trial counsel likely "had not properly understood the defense," and it appeared that trial counsel's decision to abandon the defense was neither "a reasonable professional judgment [nor] a reasoned strategic choice." *DeLuca*, 77 F.3d at 586–88. That is significantly different from the facts of this case. Here, Ostrer stated he did not discuss the "non-slayer"

affirmative defense because he did not consider it would be a "possibly successful strategy." Ostrer Aff., ECF No. 10-2, at ¶ 7.  Nothing suggests Ostrer misunderstood the nature of the defense or failed to consider the evidence necessary to establish the defense.  Additionally, unlike in *DeLuca*, in this case Petitioner faced significant downside if he were to proceed to trial, potentially on a first degree murder charge rather than a second degree murder charge. Accordingly, Petitioner cannot meet his burden to show that "no fairminded jurist could agree with the state court's application" of federal law. *Ayala*, 576 U.S. at 277 (2015).

Finally, in the context of showing prejudice with respect to a plea agreement, Petitioner bears the burden of showing that, but for counsel's alleged errors, he would not have pled guilty and would have elected to proceed to trial.  *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).  The only evidence to support Petitioner's argument here is his own self-serving affadvit that states he would have proceeded to trial if he had known about the defense.  In light of the other evidence in the record, Petitioner's affidavit is insufficient.  In any case, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.  As discussed above, the affirmative defense would not have been likely to succeed at trial, and the state court's conclusions must stand.

## CONCLUSION

For the reasons stated above, the petition is denied. There being no substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  The Clerk shall terminate all open motions and mark the case closed.

    SO ORDERED.

Dated:   June 28, 2022
     New York, New York

                ALVIN K. HELLERSTEIN
                United States District Judge